IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL ZEDOV,<br><br>Plaintiff,<br><br>v.<br><br>MR. BULT'S INC.,<br><br>Defendant. | Case No. 18-cv-7289<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Paul Zedov filed this lawsuit against his employer Mr. Bult's Inc. ("MBI") alleging MBI violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. Zedov asserts that MBI interfered with his rights under the FMLA and retaliated against him for seeking to use and using intermittent FMLA leave. MBI moves for summary judgment on the complaint in its entirety. For the reasons stated below, MBI's motion for summary judgment [22] is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the

1

adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). In doing so, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND

Defendant MBI is an Illinois corporation in the business of waste hauling and management. (DSOF ¶1).[1] Zedov was hired by MBI in 2008; he was and currently still is employed by MBI as a truck driver. (*Id.* ¶¶3, 5). At all times relevant to the complaint, MBI was a signatory to the Teamsters Local Union No. 731 Solid Waste and Recycling Industry Collective Bargaining Agreement (the "CBA"). (*Id.* ¶6). The CBA governs the hours, wages, and conditions of employment between MBI and its employees, including Zedov. (*Id.* ¶7). Zedov is a voluntary member of the Teamsters

---

[1] The facts in this Background section are undisputed unless otherwise noted. MBI's Rule 56.1 Statement of Facts (Dkt. 23) is abbreviated as "DSOF".

2

Local Union No. 731 (the "Union"). (*Id.* ¶8). The CBA sets forth the process for how MBI is to assign trucking routes to its drivers. (*Id.* ¶15).

Around December 2015, Zedov informed his supervisor at MBI, John Holleman, that his wife was diagnosed with stage four stomach cancer and that he would need FMLA leave. (*Id.* ¶9). (The parties agree that Zedov notified Holleman he would need FMLA leave, though MBI says that Zedov stated he "would need to apply for extended leave under the FMLA" while Zedov says that he "requested FMLA paperwork so he could apply for intermittent FMLA." (DSOF ¶9; Pl. Resp. ¶ 9).) From between mid-December and mid-March, Zedov remained on the Rockdale Route and was paid his full wage. (*Id.* ¶12). Although Zedov was regularly driving the Rockdale Route before March 2016, in March 2016, Zedov was replaced by a more senior driver, Ramon Quiroga, on that route. (*Id.* ¶¶22-23). Zedov received his FMLA paperwork in early April 2016. (*Id.* ¶14; PSOF ¶11). Zedov was approved for intermittent FMLA leave from approximately April 2016 through April 2017. (PSOF ¶12).

Because of this reassignment off of the Rockdale Route, Zedov suffered lost wages of approximately $30,629.59 from 2016 to 2018. (PSOF ¶ 33).[2]

---

[2] In Dkt. 26, Zedov responded to MBI's Statement of Facts and set forth his own Statement of Additional Facts. Zedov's response is abbreviated as "Pl. Resp." and his statement of additional facts is "PSOF". MBI did not respond to Zedov's Statement of Additional Facts. Therefore those facts are deemed admitted. "If the movant fails to respond properly to the opposing party's statement of additional facts, those facts will be deemed admitted." *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1017 (N.D. Ill. 2018). *Spitz v. Proven Winners N. Am., Ltd. Liab. Co.*, 969 F. Supp. 2d 994, 998 (N.D. Ill. 2013) (same); *ExxonMobil Oil Corp. v. Amex Constr. Co.*, 702 F. Supp. 2d 942, 952 n.2 (N.D. Ill. 2010) (same). *See also Kreg Therapeutics, Inc. v. VitalGo*, Inc., 919 F.3d 405, 415 (7th Cir. 2019) and *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those

## ANALYSIS

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). An employer also cannot retaliate against an employee for exercising FMLA rights. 29 U.S.C. § 2615(a)(2), (b). Zedov claims that MBI interfered with his FMLA rights and retaliated against him for exercising those rights.

### I.     FMLA Interference

"To prevail on a claim that an employer interfered with the employee's rights under the FMLA, the employee must demonstrate (1) he was eligible for the FMLA, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020) (citing 29 U.S.C. § 2615). Zedov's ability to satisfy these five factors is not in dispute. (Dkt. 24 at 3-4).[3] However MBI argues, correctly, that a

---

rules.") (quotations and citations omitted). Additionally, the Court finds Zedov's statement of additional facts to be supported by the record. And to the extent that Zedov's and Holleman's recollections of specific conversations between them differ, those are credibility questions for a jury. *See Estate of Perry v. Wenzel*, 872 F.3d 439, 454 (7th Cir. 2017).

[3] MBI makes a cursory argument that the evidence of MBI's delay in providing FMLA paperwork to Zedov is based solely on Zedov's "self-serving" deposition testimony. (Dkt. 24 at 3-4). This is not convincing as "most evidence can be called self-serving, but a witness's self-interest does not prevent a trier of fact from crediting a statement based on personal knowledge." *Koger v. Dart*, 950 F.3d 971 (7th Cir. 2020). Further, to the extent MBI is attempting to undermine Zedov's credibility, summary judgment is not a vehicle to make credibility determinations. *Estate of Perry*, 872 F.3d at 454. Moreover, there is evidence in the record supporting Zedov's testimony about the delay: dispatcher Timothy Reyling testified that Zedov would complain to him that he had not gotten his FMLA paperwork yet, and Reyling testified that he referred Zedov to Holleman. (Reyling Dep. (Dkt. 26-2, Exh. 3) p. 31).

plaintiff must show he was prejudiced by the FMLA violation. *See Lutes*, 950 F.3d at 368; *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("§ 2617 provides no relief unless the employee has been prejudiced by the violation").

Zedov argues that MBI's interference took two forms: (1) MBI discouraged him from seeking and using FMLA leave and (2) his taking FMLA leave was a factor in MBI removing him from the Rockdale Route. MBI argues that Zedov failed to show prejudice resulting from the alleged delay in providing him FMLA paperwork. (Dkt. 24 at 4-5). MBI contends that regardless of this alleged delay, Zedov ultimately was able to take FMLA leave. But the FMLA prohibits interference with the *attempt to exercise* FMLA rights. 29 U.S.C. § 2615(a)(1). And the FMLA implementing regulations show that "the ways in which an employer may interfere with FMLA benefits are not limited simply to the denial of leave. Interference also encompasses 'us[ing] the taking of FMLA leave as a negative factor in employment actions' and 'discouraging an employee from using such leave.'" *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015). Therefore the fact that Zedov was ultimately approved for FMLA does not absolve MBI from liability for alleged interference with Zedov's attempts to obtain FMLA leave in early 2016.

MBI further contends that Zedov cannot show prejudice because he was paid his full wage and remained on the Rockdale Route during the period when MBI allegedly delayed in providing him FMLA paperwork. MBI's focus on the lack of change in Zedov's compensation or job assignment for the three months before he was finally approved for FMLA misses the point. The prejudice requirement of an interference

claim does not require monetary loss. Courts look to whether the plaintiff made decisions based on their employer's interference with their FMLA rights. *See Lutes*, 950 F.3d at 368 ("if Phillips can show prejudice—in other words, that he would have structured his leave differently had he received the proper information…—his claim may survive summary judgment"). In *Preddie*, in addressing plaintiff Preddie's interference claim, the Court assessed whether the employer's comments had an effect in Preddie's decisions about leave:

> Mr. Preddie testified that '[t]he last time [Elliot] got sick,' he called his wife to take care of his son because Mr. Preddie was afraid that 'if I took off again ... there would be repercussions.' Additionally, following Mr. Preddie's March conversation with Dr. Clancy, he did not miss any additional days related to his or Elliot's conditions. Based on this evidence, a jury could conclude that Mr. Preddie made the conscious decision not to take additional leave based on Dr. Clancy's implicit threats of adverse action.

799 F.3d at 818. Here, Zedov testified that for the time period from December 2015 to when he was finally granted FMLA leave in April 2016, he made decisions about leave based on his supervisor Holleman's discouraging him from taking FMLA leave. Zedov testified that before April 2016, he was unable to take off work to care for his wife and drive her to chemotherapy because he was afraid he would be fired if he took off work without being covered by FMLA. He used personal or sick days to care for his wife, and on other occasions, his wife's son drove her to chemotherapy or she drove herself because Zedov was afraid to miss work and he "couldn't get FMLA". (PSOF ¶17; Zedov Dep. (Dkt. 23-1, Exh. 2) pp. 20, 28-29, 226, 232-34).

Zedov testified that in February 2016, after three unsuccessful conversations with Holleman about FMLA, he decided to go to MBI's Human Resources representative

to ask about FMLA leave.[4] That same day, after Zedov spoke to HR, Holleman called him to say "I thought I made myself clear," which Zedov perceived as a threat. (Zedov Dep. p. 191). Even if this statement could not be viewed as an overt threat, "the critical question is whether the employer's actions would discourage a reasonable employee from taking FMLA leave." *Preddie*, 799 F.3d at 818 n.35. By the time Zedov went to HR in February 2016, he had already been told "no" on several occasions by Holleman. (PSOF ¶¶1-3). So for Zedov to receive a call from his supervisor almost immediately after speaking to HR about FMLA, and to hear his supervisor say "I thought I made myself clear," a reasonable jury could infer that a reasonable employee hearing this from his supervisor would be discouraged from taking FMLA leave.

Even after he was granted FMLA leave, Zedov testified that in September 2016, he called Holleman to use his FMLA, but Holleman responded, "a lot of guys wives are sick, but they still show up for work. I don't mean to sound insensitive, but you've been missing a lot of Saturdays." (PSOF ¶14). Holleman admitted that he may have said something to this effect to Zedov. (Holleman Dep. (Dkt. 26-2, Exh. 1) p. 61). Again a reasonably juror could infer from Holleman's statements to Zedov that Zedov would feel discouraged from taking FMLA leave both before and after he was granted FMLA leave.

---

[4] MBI does not argue that Zedov did not provide notice of his intent to take leave and indeed concedes that in the first conversation with Holleman, Zedov told him about his need for FMLA leave. (DSOF ¶9). Nevertheless the Court notes that meeting the notice requirement is not a high bar. "The notice requirements of the FMLA are not onerous. An employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions." *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006).

The FMLA regulations also expressly define interference to include the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c). Given these facts in this case, a reasonable juror could infer that Zedov's taking of FMLA leave was a negative factor in MBI's decision to reassign him from the Rockdale Route. Holleman failed to provide Zedov with FMLA paperwork despite three requests over three months for the FMLA paperwork. (PSOF ¶¶1-3). The same month that Zedov made his fourth (and final) request to Holleman for his FMLA paperwork, March 2016, and when he was finally provided the FMLA paperwork, he was reassigned from the Rockdale Route. (*Id*. ¶8). In addition, multiple witnesses were asked, but none could identify, another MBI employee that was reassigned from his route based on the bid system as Zedov was. (*Id*. ¶26).

In sum, Zedov has raised genuine issues of material fact that MBI interfered with Zedov's rights under the FMLA.

**II.     FMLA Retaliation**

To establish retaliation under the FMLA, "an employee must demonstrate he was engaged in a protected activity, the employer took an adverse employment action against him, and there was a connection between his protected activity and the adverse employment action." *Lutes*, 950 F.3d at 363 (citation omitted). To survive summary judgment on a claim of retaliation, a plaintiff must point to evidence supporting a reasonable inference that he was fired because he took (or requested) protected leave. *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 505 (7th Cir. 2017).

MBI does not dispute that Zedov engaged in a protected activity but contends that he cannot show that an adverse employment action was taken against him. (Dkts. 24, 29). Even if he could show an adverse employment action, MBI argues, he cannot establish a causal connection between that action and his exercising his FMLA rights because the route assignment was done based on the CBA's prescribed method for assigning routes that required giving preference to senior employees.

**A. Adverse Employment Action**

"Generally, an adverse employment action 'fall[s] into [one of] three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge.'" *Tarpley v. City Colls. of Chi.*, 752 F. App'x 336, 346-47 (7th Cir. 2018) (citation omitted). A materially adverse change might be indicated by "a demotion evidenced by a decrease in wage or salary…or other indices that might be unique to a particular situation." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013) (citation and quotations omitted).

Here, Zedov argues that his being taken off the Rockdale Route resulted in him losing total wages of approximately $30,629.59 from 2016 to 2018. (PSOF ¶33). MBI argues that his pay rate was "marginally lower" (Dkt. 29 at 7) but fails to address Zedov's assertion that because of the reassignment, he lost $30,629.59. MBI also does not cite any authority that a decrease in wage or salary must be of a certain

magnitude to constitute a materially adverse employment action. Such a wage loss constitutes an adverse employment action. Moreover, other witnesses testified that the Rockdale Route was coveted by drivers because it was well-paying compared to other routes. Holleman acknowledged that Zedov liked the Rockdale Route because it "paid very well." (Holleman Dep. p. 22). Union Steward Tom Browne also testified that drivers prefer the Rockdale Route because of the better pay. (Browne Dep. (Dkt. 26-2, Exh. 4) p. 27).

MBI also argues that pay rates are set by the Union and CBA. (Dkt. 29 at 7).[5] However it is not clear to the Court how the fact that the Union and CBA sets pay scales means that MBI's decision to reassign Zedov from a particular route could not be a materially adverse employment action. MBI made the decision to reassign him, not the Union or CBA. Therefore drawing reasonable inferences from the evidence in favor of Zedov, there is a genuine dispute about whether Zedov's reassignment from the Rockdale Route constituted a materially adverse employment action.

### B. Causal Connection

Zedov argues that he removed from the Rockdale Route in retaliation for his repeated requests for FMLA leave and the evidence shows a sufficient casual connection. In assessing the causal connection, the Court "consider[s] the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation."

---

[5] This argument is raised for the first time in MBI's reply brief. However a party may not present new arguments for the first time in a summary judgment reply brief. *Aircraft Gear Corp. v. Marsh,* 2004 U.S. Dist. LEXIS 19859, at *7-8 (N.D. Ill. Sep. 28, 2004). Even considering this argument, as discussed, it does not provide a basis to grant summary judgment to MBI.

*King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017). A plaintiff may raise suspicious timing but that alone is rarely sufficient to prevent summary judgment. *Lutes*, 950 F.3d at 369. "A plaintiff must ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation." *Tibbs*, 860 F.3d at 505. *See Ricco v. Sw. Surgery Ctr., LLC*, 73 F. Supp. 3d 961, 972 (N.D. Ill. 2014) (plaintiff created a genuine issue of fact regarding her FMLA claim by showing suspicious timing and providing some evidence that the justification for her termination was pretextual).

Zedov raises suspicious timing because he asked for FMLA leave in December 2015 and in January, February and March 2016, and was reassigned from the Rockdale Route in March 2016. That was the same month he made his fourth and final request for FMLA to Holleman. Taking the February 2016 conversation with HR and then with Holleman (where Holleman told Zedov, "I thought I made myself clear") and the March 2016 date of reassignment, that is only a matter of weeks between his seeking FMLA leave and his reassignment. *See Gresham-Walls v. Brown*, 2014 U.S. Dist. LEXIS 164807, at *14 (N.D. Ill. Nov. 25, 2014) (three weeks between protected activity and adverse action sufficient to show suspicious timing in FMLA case); *Haworth v. Round Lake Area Sch.*, 2019 U.S. Dist. LEXIS 116746, at *24 (N.D. Ill. July 15, 2019) ("suspicious timing of the decision to let plaintiff go, only a few weeks after he returned from FMLA leave, provides additional support for an inference of causation.").

11

In addition to suspicious timing, Zedov provides additional evidence from which a juror could conclude that his reassignment was pretextual. The only explanation MBI provided for Zedov's reassignment was the bid sheet system and that once a bid was placed for Zedov's Rockdale Route, it had to be assigned to the more senior driver, Quiroga. Although MBI maintains that the reassignment was dictated solely by the CBA-mandated bid system, Holleman testified that despite that system, he still had some discretion with driver assignments. At his deposition, when asked, "So you're telling me that you – even now, after the bid sheet system, you still have some discretion in assigning drivers routes?" Holleman responded "correct." (Holleman Dep. p. 20). Browne also testified that the CBA does not actually require MBI to select the more senior driver in the bid process, and despite that process, MBI retained some discretion in assigning drivers routes. (Browne Dep. pp. 58, 78). In addition, the bid system was only implemented in the Burnham location in February 2016, the same month the bid was put out for Zedov's route. (PSOF ¶19).

Further, as discussed above, Holleman made statements to Zedov both before and after he was approved for FMLA in April 2016 from which a reasonable juror could conclude that Holleman harbored retaliatory animus against Zedov for seeking and obtaining FMLA leave. And as discussed, multiple witnesses could not identify another driver like Zedov who had been reassigned from his route based on the bid sheet system. (Holleman Dep. p. 29-30; Reyling Dep. p. 24; Browne Dep. p. 61; Zedov Dep. p. 240).

Considering the evidence as a whole, a reasonable jury could draw an inference of retaliation by MBI against Zedov, and therefore summary judgment in MBI's favor is not warranted.

**CONCLUSION**

For the stated reasons, Defendant MBI's summary judgment motion [22] is denied.

E N T E R:

Dated: March 31, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge